UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DARREN M. FINDLING | Case No. 19-11102 |
| Plaintiff, | SENIOR U. S. DISTRICT JUDGE ARTHUR J. TARNOW |
| v. | |
| CITY OF WYANDOTTE ET AL. | U.S. MAGISTRATE JUDGE R. STEVEN WHALEN |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT [36]**

Plaintiff Darren Findling, personal representative of decedent Joshua Nance's estate, commenced this §1983 action against Defendants City of Wyandotte and Officer Anthony Jantz on April 16, 2019. Plaintiff claims that on September 19, 2016, Defendant Jantz engaged in a high-speed pursuit of a 1995 GMC Suburban ("Suburban") after it drove through a red traffic light. The Suburban was driven by Eric Turnipseed; decedent Joshua Nance was in the passenger seat. Plaintiff alleges that during the approximately two-mile chase, Defendant Jantz intentionally collided with the Suburban causing it to crash. Joshua Nance was ejected from the vehicle during the crash and was found dead as the scene.

Plaintiff alleges the following claims: Fifth Amendment deprivation of life (Count I); Fourteenth Amendment deprivation of life (Count II); Fourth Amendment unreasonable seizure (Count III); Michigan Constitution Due Process violation (Count IV); Michigan Constitution unreasonable seizure (Count V); §1983 municipal liability (Count VI); Gross Negligence (Count VII); Statutory Liability (Count VIII).

Before the Court is Defendants' Motion to Dismiss and for Summary Judgment [36] filed on June 19, 2020. In it, Defendants seek to dismiss counts I, IV, and V, and seek summary judgment on the remaining claims. Plaintiff filed a Response [39] on July 4, 2020. Defendant filed a Reply [40] on July 20, 2020. The Court held a hearing on the motion on December 9, 2020. Defendants' Motion to Dismiss [36] was **GRANTED** on the record, because Plaintiff conceded to the dismissal of counts I, IV, and V. For the reasons stated below, Defendants' Motion for Summary Judgment [36] is **GRANTED in part** and **DENIED in part**.

### FACTUAL BACKGROUND

Most of the facts are undisputed. The key dispute is whether or not the police collided with the Suburban in order to stop it. The morning of September 19, 2016, Eric Turnipseed and Joshua Nance ran into each other at the liquor store on Fort Street in Wyandotte. (ECF No. 36-2, PageID.222). After meeting, the two left the

liquor store together in Nance's Suburban to drink at an Irish pub down the street. (*Id.* at 223). Nance and Turnipseed drank together all day and both became intoxicated. (*Id.*). Later at night Nance asked Turnipseed to drive his Suburban, because Nance thought he was too drunk to drive. (*Id.* at 224-25). When Turnipseed took over driving, they went to Taco Bell. (*Id.* at 237). Leaving the Taco Bell drive through, Turnipseed took a right onto Fort Street, drove northbound towards Lincoln Park, and drove through a red light. (*Id.* at 205). Officer Jantz and his partner Officer Douglas Johnston, who was in the passenger seat, heard the Suburban's tires squeal and observed it run the red light. (ECF No. 36-3, PageID.255). Officer Jantz then attempted to pull the Suburban over. (*Id.*). The Suburban did not stop. (*Id.* at 255-56). It travelled up to 80mph on a 45mph road and continued through subsequent red lights. (*Id.*).

Turnipseed then stopped the Suburban at the side of the road just north of Goddard road. (*Id.*). When the Suburban came to a stop Officer Jantz positioned the police car so that the front right passenger side made contact with the Suburban's driver's side door. (*Id.* at 257). As soon as Officer Jantz stepped out of the car, the Suburban drove away and pulled the bumper partially off the police car. (*Id.* at 258-59). Turnipseed states that he stopped because Nance wanted to get out, but then changed course. "I told him to get out and I was going to get out. But then he was

like I don't want to go to jail. And I was like I don't want to go to jail either. And next thing you know we pulled off again." (ECF No. 36-2, PageID. at 233).

After they pulled off, Turnipseed claims that Nance tried to reach his foot over to press the brake pedal. (*Id.* at 240). Turnipseed also claims that he heard a loud bang that sounded like metal to metal contact and then he lost control of the vehicle. (*Id.* at 244). He perceived the sound as the police car hitting the back of the Suburban causing the car to slingshot back and forth. (*Id.* at 212-23). He also claims that the Suburban hit the median at some point. (*Id.* at 241).

Defendant Jantz claims that he did not make contact with the Suburban during the chase. (ECF No. 36-3, PageID.267). He observed the Suburban's front left tire go on to the median and come down and then the car began to weave back and forth. (*Id.* at 262). Turnipseed claims that after losing control of the vehicle, Nance took off his seatbelt. (ECF No. 36-2, PageID. 239). The Suburban then hit a road sign, flipped over, and crashed into a Dix Coney Island sign. (ECF No. 36-2, PageID.238-39); (ECF No. 36-4, PageID.277); (ECF No. 36-6).

Defendant's expert witness, a mechanical engineer, investigated the accident and concluded that the police car did not come into contact with the Suburban. (ECF No. 36-6). All of Defendant's testimony and accident reports maintain that Defendant did not collide with the Suburban during the pursuit. The City of

Wyandotte policy for operating motor vehicles allows officers to intentionally collide with other vehicles to stop a fleeing vehicle only as a matter of last resort. (ECF No. 36-8, PageID.323). Last resort is defined as situations where "immediate and drastic measures must be undertaken by an officer in order to protect human life." (*Id.* at 315). Additionally, in order to effectuate an intentional collision an officer needs prior approval from the shift commander on-duty. (*Id.* at 323). The shift commander on-duty, Sergeant Gerald Conz, neither commanded nor gave prior approval to Officer Jantz to collide the Suburban. (ECF No. 36-5); (ECF No. 36-9, PageID.327). Chief of Wyandotte Police Department, Brian Zalewski, claims that in his 29 years at the police department, officers have never been trained in Pursuit Intervention Technique ("PIT") and he is not aware of an incident where an officer intentionally collided with another vehicle. (*Id.*). Turnipseed is the only witness that states that the police car collided with the Suburban. The record also contains a video from inside the Suburban of the pursuit and crash. (ECF No. 37).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that

the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### I. Count II & III: § 1983 Fourteenth Amendment Due Process and Fourth Amendment Unreasonable Seizure

Plaintiff asserts § 1983 claims under Fourteenth Amendment due process and Fourth Amendment unreasonable seizure. The Fourteenth Amendment states that no state may deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV. Under the Fourth Amendment, seizure occurs "when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original). "[T]he use of high-speed pursuits by police officers is not an unreasonable method of seizing traffic violators." *Galas v. McKee*, 801 F.2d 200, 203 (6th Cir. 1986). However, unconstitutional seizure in a police chase occurs when a police officer intentionally uses physical control, such as setting up a roadblock in an unreasonable manner. *Brower*, 489 U.S. at 595-600.

Here, although all of Defendants' evidence shows that Officer Jantz did not collide with the Suburban. Plaintiff has shown sufficient evidence such that a reasonable juror could conclude that an intentional collision occurred. First, Turnipseed's testimony consistently states that the police hit the Suburban to stop it and even claims to have heard a metal hitting metal sound right before he lost control of the vehicle. There are, however, problems with his testimony, including: the fact that he did not look at his mirrors to see the police car hit him, the fact that he admits that it is possible that the sound he heard could have been the Suburban hitting the median, and the fact that he was intoxicated at the time of the incident. These problems create credibility questions for the jury to answer, not the Court. Albeit somewhat self-serving, Turnipseed's testimony still creates a genuine dispute of fact. *See Davis v. Gallagher*, 951 F.3d 743, 745 (6th Cir. 2020) ("[w]hen there is evidence to support each version of the parties' dueling allegations, summary judgment is not appropriate—even when the evidence includes self-serving statements from the parties.").

Plaintiff also presents circumstantial audio evidence of the collision which has been analyzed by Plaintiff's audio forensic expert. (ECF No. 36-10). As a result of the report, Plaintiff argues that Turnipseed can be heard yelling "No" immediately after the volume of the police car's sirens increased, evidencing that the police car

was close enough to the Suburban to hit it. (*Id.*). Although there is a question as to what weight this evidence should receive, if shown to a jury, especially using expert testimony, it could convince them that a collision occurred. Additionally, Plaintiff notes that the Suburban sustained rear damage that is consistent with a rear collision, but not with a rollover, as Defendants allege. (ECF No. 39-13). Moreover, Nance's brother states that the car, which was bought only eleven days before the crash, did not have any rear damage just 24-48 hours before the crash. (ECF No. 39-12). Plaintiff has therefore shown a genuine dispute of fact to survive summary judgment on these claims.

### II. Count VI: Municipal Liability

To prevail on his municipal liability claim, Plaintiff must show not only that Nance's constitutional rights were violated, but also that the "violation occurred because of [an official] municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal

rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694; *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). In addition, "municipal policy must be 'the moving force of the constitutional violation'." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

Plaintiff proceeds on a "failure-to-train" theory. Failure to train may serve as the basis for § 1983 municipal liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Brown v. Chapman*, 814 F.3d 447, 463 (2016) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)) (internal quotation marks omitted). To demonstrate deliberate indifference, Plaintiff must show "prior instances of unconstitutional conduct demonstrating that the [County] . . . ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (internal quotation marks omitted).

Case law dictates that one prior incident does not create an established custom or policy. The Supreme Court has stated that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless

proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 823–24.

Here, Plaintiff points to two policies that attributed to Officer Jantz's constitutional violation: (a) allowing high speed chases for civil infractions and (b) not equipping the police cars with dash cameras. Although these policies and procedures exist, they are too attenuated to be "the moving force of the constitutional violation'." *Tuttle*, 471 U.S. at 820. Simply allowing high speed chases under certain circumstances does not mean police officers were given free range to intentionally collide with the object of their pursuit. In fact, the Wyandotte Police Department's policies are clear that such an intentional collision should only be effectuated as a last resort in order to protect human life. Defendants' evidence shows that their officers were not trained in or taught to use this tactic. Their policy also requires prior approval from the shift commander for an intentional collision. No such approval was either asked for or given here. Plaintiff does not dispute this evidence.

Additionally, Plaintiff claims that the Department removed the dash cameras from their police vehicles in order to avoid accountability during pursuits and allow intentional collisions. Defendants, however, contradict this by showing that new dash cameras were not bought in 2015, the year before the incident, solely due to

budgetary concerns. (ECF No. 40-5, PageID.474). Plaintiff again does not dispute this evidence and fails to show the connection between his allegations and Officer Jantz's decision to intentionally collide with the Suburban.

Furthermore, Plaintiff has also failed to show a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Wyandotte's Chief of Police testified that he was not aware of any incident of intentional collision since they implemented the policy in 2007 to the date of the incident. Plaintiff has not shown any evidence to the contrary. Therefore, the City of Wyandotte is not liable for Officer Jantz's constitutional violations.

### III. Count VII: Gross Negligence against Defendant Jantz; Count VIII: Statutory Liability against Defendant Wyandotte

Defendants also seek summary judgment on Plaintiff's state law claims because there is no genuine dispute of fact regarding the collision. Under Michigan's Governmental Tort Liability Act (GTLA), an officer is generally immune from tort liability for injuring a person or damaging property during the course of employment. MICH. COMP. LAWS § 691.1407(2); *Odom v. Wayne Co.*, 482 Mich. 459, 470, 479-480. However, government employees can be held liable for gross

negligence that proximately causes the injury. *Robinson v. Detroit*, 462 Mich. 439, 458-59 (2000). A proximate cause is defined as "one most immediate, efficient, and direct cause preceding an injury." *Curtis v. City of Flint*, 253 Mich. App. 555, 563 (2002) (*Robinson*, 462 Mich. at 458-59). "'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(8)(a).

Similarly, under the GTLA, a governmental agency can be held "liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner." *Id.* § 691.1405. As established above, Plaintiff has shown enough evidence that Officer Jantz intentionally collided with the Suburban, disregarding the risk to human life, and proximately causing Nance's death and damage to his vehicle. Furthermore, Defendants have failed to show in their defense that the intentional collision was within the scope of Officer Jantz's authority, was discretionary, and undertaken in good faith or not with malice. *Odom*, 482 Mich. at 479-80 (outlining affirmative defenses to individual governmental immunity that a defendant can raise). Because Plaintiff has shown a genuine dispute of fact regarding the collision, both the gross negligence claim against Officer Jantz

and the ordinary negligence claim against the City of Wyandotte survive summary judgment.

## Conclusion

The Court **GRANTS** Defendants' Motion for Summary Judgment [36] in regard to Plaintiff's *Monell* claim and **DENIES** summary judgment on the remaining claims, because Plaintiff has established a genuine dispute of fact regarding the police car's collision with the Suburban. The Court also **GRANTS** Defendants' Motion to Dismiss [36].

**IT IS ORDERED** that Defendants' Motion to Dismiss and for Summary Judgment [36] is **GRANTED in part and DENIED in part**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: March 30, 2021               Senior United States District Judge